IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL MCDONNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case. No.: |
| | ) | |
| NATURE'S WAY PRODUCTS, LLC, and SCHWABE NORTH AMERICA, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

This class action stems from defendants' marketing and selling of Alive! Women's Energy Supplement and other vitamin supplements as "Made in the USA," when the products contain substantial ingredients sourced from foreign countries. Plaintiff brings this class action under the laws of Illinois and the similar laws of other states on her own behalf and on behalf of all others similarly situated.

**I.**

**Parties, Jurisdiction, and Venue**

1.  Plaintiff Angel McDonnell is an adult resident citizen of Plainfield, Illinois, which is within this district and division.

2.  Defendant Nature's Way Products, LLC ("Nature's Way"), is a limited liability company organized under the laws of the state of Wisconsin with its

1

principal place of business in Green Bay, Wisconsin. According to the package label of the products, Nature's Way is the manufacturer of Alive! Women's Energy Supplement and other vitamin supplements.

3. Defendant Schwabe North America, Inc. ("Schwabe"), is a corporation organized under Wisconsin law with its principal place of business in Green Bay, Wisconsin. Schwabe is the North American operating subsidiary of Dr. Wilmar Schwabe Pharmaceuticals GmbH & Co. KG, a German company that, according to press reports, purchased Nature's Way in or before 2009. Plaintiff at this time does not know the present legal status of Nature's Way nor its corporate relationship with Schwabe and its German parent. On its website, Nature's Way states that "Nature's Way is part of the Schwabe Group—the global leader in plant-based medicines." http://trusttheleaf.com/#/about_us.

4. Because there is diversity between Plaintiff and the corporate defendants, and because the aggregate amount in controversy for the class claims exceeds $5,000,000, exclusive of interest and costs, diversity jurisdiction exists under 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005.

5. Defendants sold, and Plaintiff bought, the Alive! Women's Energy Supplement in this district and division, so venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the conduct giving rise to this action occurred in this district and division.

## II.

## Factual Background

6. Plaintiff is an unsophisticated consumer who, on several occasions within the applicable limitations period, including throughout 2013 and 2014, bought Nature's Way Alive! Women's Energy Supplement for personal and household use. Plaintiff purchased the supplements at CVS and Walgreens stores in Joliet and Plainfield, Illinois.

7. The label of Alive! Women's Energy Supplement states: "Made in USA."



8. This representation of the USA as the country of origin is deceptive because Alive! Women's Energy Supplement contains substantial ingredients that are manufactured in and sourced from foreign countries. These foreign-sourced ingredients include vitamins, such as, without limitation, vitamin C (ascorbic acid). The supplements are not "all or virtually all" made in the USA, and the parts of the supplements sourced from outside the USA are a "significant part" of the products. Therefore, under the guidelines of the Federal Trade Commission, the use of the phrase "made in the USA" on the labels is deceptive.

9. Defendants placed these misleading and inaccurate labels on their products with the intention that Plaintiff and other consumers rely on them.

10. Plaintiff is an unsophisticated consumer who purchased the products for household use.

11. Plaintiff is also a patriotic American who prefers to purchase goods made in the United States rather than imported goods, and is willing to pay a premium for American-made goods. In this regard, Plaintiff is similar to other American consumers who are willing to pay more for American-made goods.

12. A 2015 survey by Consumer Reports magazine found that almost 80% of Americans are willing to pay more for American-made goods.

> This month . . . we examine one of the nation's most ubiquitous labels: Made in America. It's a phrase that wields real power in the marketplace. A recent Consumer Reports survey found that 77 percent of Americans are willing to pay more for a product that has the claim.

"What does the 'Made in America' label really mean?" Consumer Reports, July 2015, available at www.consumerreports.org/cro/magazine/2015/07/from-our-president-july-2015/index.htm.

13. Research by the American Marketing Association, published in the Journal of International Marketing, confirms these findings:

> Our findings show that consumers not only prefer and assign a higher value to branded products from a country of origin with a favorable country image but also are willing to spend more money to obtain them.

"Consumers will pay more for a 'Made in the USA' label," Journal of International Marketing, March 2016, summary available at www.ama.org/publications/JournalOfInternationalMarketing/Pages/pr_jim.10.0140.aspx.

14. Plaintiff saw the misleading label prior to purchasing Defendants' supplements and relied upon that label, believing that the "Made in USA" label meant that the supplements met the legal standard to bear such labels.

15. Illinois law requires that "consideration shall be given to the interpretations of the Federal Trade Commission" concerning unfair or deceptive trade practices. 815 ILCS 505/2. "In determining whether a given course of conduct is unfair, we observe that the Consumer Fraud Act mandates that 'consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." Robinson v. Toyota Motor Credit Corp., 775 N.E. 2d 951, 960 (Ill. 2002).

16. Attached hereto as Exhibit "A" is the Federal Trade Commission's ("FTC") Enforcement Policy Statement on U.S. Origin Claims. This document provides guidance to manufacturers and merchants regarding the use of "Made in USA" and similar claims in marketing and advertising.

17. As this guidance makes clear, a claim that a product is made in the USA can be express or implied. The "Made in USA" label on Defendants' products constituted an express claim of domestic origin.

18. For a product to be called American-made or claimed to be of domestic origin, without qualifications or limits on that claim, the product must be "all or virtually all" made in the United States. The term "United States," as referred to in the Enforcement Policy Statement, includes the 50 states, the District of Columbia, and all U.S. territories and possessions. "All or virtually all" means that all significant parts and processing that go into the product must be of U.S. origin. That is, the product should contain no – or negligible – foreign content.

19. When a manufacturer or marketer makes an unqualified, express claim that a product is American-made, it should have and rely on a "reasonable basis" to support the claim at the time it is made. This means a manufacturer or marketer needs competent and reliable evidence to back up the claim that its product is "all or virtually all" made in the United States.

20. In a Federal Register notice, the Customs Service indicated that, where a product has a foreign origin, any references to the United States would be considered misleading to the ultimate purchaser and would require foreign country-of-origin marking in accordance with 19 C.F.R. § 134.46. 62 Fed. Reg. 44,211, 44,213 (1997).

21. Plaintiff has suffered damages because she paid more for the products than they were actually worth.

22. Defendants sell other dietary supplements that, like Alive! Women's Energy Supplement, are labeled "Made in USA" but contain ingredients manufactured and sourced in foreign countries. These foreign-sourced ingredients include, without limitation, vitamin C. The products at issue include all vitamin supplements containing vitamin C and labeled as made in the USA. Those products also were not "all or virtually all" made in the USA. Like the product Plaintiff purchased, those products contained significant ingredients sourced outside the USA.

23. Plaintiff will continue to be damaged because Defendants sell a wide variety of different products under multiple brand labels. These products contain many ingredients that the average consumer does not know the source of, some of which are often not sourced in the United States. Because of Defendants' deceptive

labeling, Plaintiff and the class of people in her position cannot know whether a given item is actually made in the United States or not.

24. The present suit is not the first time that Defendants have been accused of falsely labeling or advertising their products. For example, in July 2015, a class action that remains ongoing was filed in the Central District of California alleging that the labels of two of Defendants' Gingko-based products made false health claims. http://www.gilmanlawllp.com/natures-way-ginkgold-advanced-ginkgo-extract-and-max-advanced-ginkgo-extract-max-lawsuit/. Another lawsuit, filed in January of 2016, alleges that the labels of Nature's Way Coconut Oil contain false claims concerning health benefits. https://www.truthinadvertising.org/natures-way-coconut-oils/. In order for Plaintiff, the class she seeks to represent, and the general public to avoid being deceived by similar misleading labels in the future, injunctive relief is necessary.

### III.

### Class Allegations

25. Plaintiff brings this action on her own behalf and on behalf of others similarly situated as a multi-state class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class which Plaintiff seeks to represent is composed of and defined as:

> All persons in states which have enacted the Uniform Deceptive Trade Practices Act, the Illinois Consumer Fraud and Deceptive Business

> Practices Act, or any act similar in substance, who, within the applicable limitations period, have purchased dietary supplements manufactured and marketed by defendants labeled "Made in the USA or were otherwise labeled as "USA-sourced" items.

The Illinois laws in question are 815 ILCS 510/2 and 815 ILCS 505/2. The other states with similar if not identical laws are California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. See Cal. Bus. & Prof. Code § 17200, et seq.; Fla. Stat. § 501.201 et seq.; Mich. Stat. §445.901 et seq.; Minn. Stat. §§325F.68-325F.70; Mo. Rev. Stat § 407.010 et seq.; N.J. Stat. Ann. § 56:8-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; and Wash. Rev. Code §19.86.010 et seq. In Mullins v. Direct Digital, LLC, the plaintiff sought to represent a similar class, including all nine states that Plaintiff seeks to include here. 795 F.3d 654 (7th Cir. 2015). The Seventh Circuit affirmed certification of the multi-state class alleging violations of these laws in Mullins. Id.

26. Alternatively, if the Court does not certify the above class, Plaintiff seeks to represent the following Illinois-only class:

> All Illinois residents who, within the applicable limitations period, have purchased dietary supplements manufactured and marketed by defendants labeled "Made in the USA or were otherwise labeled as "USA-sourced" items.

27. This action has been brought and may be properly maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure,

9

and satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements thereof.

28. Defendants market their dietary supplements in major retail stores throughout the United States as well as on the Internet. Therefore, the plaintiff class is so numerous that the individual joinder of all members is impracticable. The class meets the numerosity requirement of Fed. R. Civ. Proc. 23(a)(1).

29. Common questions of law and fact, including whether Defendants' dietary supplements contain ingredients manufactured and sourced from foreign countries, exist in this case. The class meets the commonality requirement of Fed. R. Civ. Proc. 23(a)(2).

30. Plaintiff's claims are typical of the claims of the members of the class under Fed. R. Civ. P. 23(a)(3). The Plaintiff and all members of the class sustained damages arising out of defendants' common course of conduct in violation of the law as complained herein. The losses of each member of the class were caused directly by Defendants' wrongful conduct in violation of the law as alleged herein.

31. The Plaintiff named herein will fairly and adequately protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4). The named Plaintiff has no interests which are adverse to the interests of absent class members. Plaintiff, like all class members, purchased dietary supplements falsely labeled "Made in USA."

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. Proc. 23(b) because individual joinder of all class members is impracticable. Furthermore, because the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual class members to redress the wrongs done to them. Individual litigation would likewise burden the court system to a much greater degree than a class action, and would present the potential for inconsistent or contradictory judgments. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

## IV.

## Claims for Relief

### COUNT 1

### Violation of Uniform Deceptive Trade Practices Act

33. Plaintiff incorporates by reference paragraphs 1-18 of this Complaint as if fully set forth herein.

34. The Uniform Deceptive Trade Practices Act, codified in Illinois at 815 ILCS 510/1 et seq., makes it a deceptive trade practice to use "deceptive

representations or designations of geographic origin in connection with goods or services." 815 ILCS 510/2(a)(4).

35. Defendants violated 815 ILCS 510/2(a)(4) by labeling and marketing their dietary supplements as made in the USA when, in fact, they were not.

36. Defendants have violated this section repeatedly and willfully, intentionally using "Made in the USA" labels to confuse and defraud shoppers.

37. Plaintiff, and the class she represents, are entitled to injunctive relief as well as costs and attorneys' fees under 815 ILCS 510/3.

## COUNT 2

**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**

38. Plaintiff incorporates by reference paragraphs 1-18 of this Complaint as if fully set forth herein.

39. 815 ILCS 505/2 makes it an unfair or deceptive act or practice to engage in any activity that violates 815 ILCS 510/2. Because Defendants violated 815 ILCS 510/2(a)(4), they also violated 815 ILCS 505/2.

40. Under 815 ILCS 505/2, the Made in USA statements by Defendant constituted a deceptive act or practice. The Made in USA statements were made and the purchases occurred in trade or commerce. Defendant intended that Plaintiff and the class rely on the statements. The deception caused damage to Plaintiff and the class.

41. Plaintiff, and the class they represent, are entitled under this act to actual damages calculated by difference in price between the product as sold and what it would have been worth had it not been deceptively advertised, punitive damages, and attorneys' fees.

## COUNT 3

### Claims Under Similar State Statutes

42. Other states have deceptive trade practices acts which, as they apply to the facts at issue here, are in substance the same as the Acts referenced in Counts 1 and 2, prohibiting the conduct detailed herein. The other states with similar if not identical law are California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. See Cal. Bus. & Prof. Code § 17200, et seq.; Fla. Stat. § 501.201 et seq.; Mich Stat. §445.901 et seq.; Minn Stat. §§325F.68-325F.70; Mo. Rev. Stat § 407.010 et seq.; N.J. Stat. Ann. § 56:8-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; and Wash. Rev. Code §19.86.010 et seq. On behalf of the plaintiff class, plaintiff asserts claims under those statutes as well for class members residing in those states.

43. On behalf of the out-of-state class members, plaintiff seeks actual damages, punitive damages, attorney's fees, and costs.

### PRAYER FOR RELIEF

Based on the foregoing, Plaintiff prays for the following relief:

A) An order certifying this as a multi-state class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B) An order appointing Plaintiff's counsel as Class Counsel to represent the interests of the class;

C) After trial, an injunction ordering Defendants to stop their violations of law as alleged herein;

D) After trial, an award of compensatory and punitive damages;

E) An award of costs, including reasonable attorneys' fees; and

F) Such further or different relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by struck jury on all counts.

Respectfully Submitted,

/s/ John E. Norris
John E. Norris
One of the Attorneys for Plaintiff

**OF COUNSEL:**
DAVIS & NORRIS LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com
krivers@davisnorris.com

Gerald Bekkerman
Jennifer Bekkerman
BEKKERMAN LAW OFFICES, LLC
444 N. Michigan Ave. #1000
Chicago, Illinois 60611
Telephone: 312.254.7399
gbekkerman@bekkermanlaw.com
jbekkerman@bekkermanlaw.com