## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL MCDONNELL, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case. No.: 1:16-CV-05011** |
| | ) | |
| NATURE'S WAY PRODUCTS, LLC, | ) | |
| | ) | |
| **Defendant.** | ) | |

### SECOND AMENDED CLASS ACTION COMPLAINT

This class action stems from defendant's marketing and selling of Alive! Women's Energy Supplement and other vitamin supplements listed herein with an unqualified representation that the products are "Made in the USA," when the products actually contain substantial ingredients sourced from foreign countries. Plaintiff brings this class action under the laws of Illinois and the similar laws of other states on her own behalf and on behalf of all others similarly situated.

### I.     Introduction

1.     In determining whether a product may bear a label with the unqualified statement of origin such as "Made in the USA" without violating Illinois unfair trade practices laws, Illinois law directs the Court to look to federal law under the Federal Trade Commission Act, including the regulations and decisions of the Federal Trade Commission and the federal courts. 815 ILCS 505/2 (requiring that "consideration

shall be given to the interpretations of the Federal Trade Commission" concerning unfair or deceptive trade practices. 815 ILCS 505/2). "In determining whether a given course of conduct is unfair, we observe that the Consumer Fraud Act mandates that 'consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." Robinson v. Toyota Motor Credit Corp., 775 N.E.2d 951, 960 (Ill. 2002).

2.     The FTC regulations divide domestic-source representations into two types: qualified and unqualified. Qualified statements typically say something like "Made in the USA from domestically and foreign-sourced ingredients." Unqualified statements, on the other hand, simply say "Made in America" or "Made in the USA" without any further explanation, and so invite a higher level of scrutiny. The Federal Trade Commission has defined the unqualified term "Made in the USA" to mean that the product is "all or virtually all" made in the United States. The phrase "all or virtually all" means, according to the FTC, that "all significant parts and processing that go into the product must be of U.S. origin, that is, the products should contain no—or negligible—foreign content." Even if foreign-sourced parts or ingredients constitute only a small percentage of a product, the FTC does not allow a company to make an unqualified claim of U.S. origin ("Made in the USA") if those parts or ingredients are significant parts or ingredients. In such cases, only a qualified claim

of domestic source is permissible, such as "Made in the USA from domestic and foreign ingredients."

3.     A sterling example of this principle is contained in a November 20, 2015 FTC staff letter to an attorney representing Niall Luxury Goods, a watch-manufacturer that made an unqualified claim that its watches were made in the U.S. The Niall watches contained a movement manufactured in Switzerland, and the movement was a small percentage of the overall product in terms of content and price.  The FTC confirmed that an unqualified representation of domestic origin was impermissible in these circumstances, reasoning: "In this case, though the cost of a Swiss movement may be small relative to Niall's overall U.S. manufacturing costs, without a movement, a watch cannot tell time. Therefore, movements are essential to the function of a watch." The FTC concluded that the remedial steps taken by Niall, which were to change the domestic-source representation from unqualified to qualified, were sufficient and no further action was needed:

> Accordingly, to avoid deceiving consumers, Niall implemented a remedial action plan to qualify its representations. This plan included:
>
> (1) updating claims on watch dials and bezels to clarify that the watches contain Swiss parts;
>
> (2) updating websites and social media; and
>
> (3) adopting new compliance measures, including legal review of future marketing materials and a coordinated media plan.

> Based on your actions and other factors, the staff has decided not to pursue this investigation any further.

This FTC letter, published for guidance, is entirely consistent with other guidance published by the FTC. See, e.g., Spray Pal Closing Letter, (Oct 1, 2015) (Unqualified U.S. origin claim deceptive for diaper cleaning device because clip which held diaper to device was imported "although the cost of the clip may be small relative to the overall manufacturing costs, the clip is essential to the function of the Spray Pal product."); Gorilla Glue Closing Letter (June 5, 2015) (Unqualified claim deceptive for glue because "key raw material in the product that gives it its adhesive quality is sourced overseas."); Leggett & Platt, Inc. Closing Letter (Feb 25, 2016) (Unqualified claim deceptive on adjustable desk because "the imported motor and electronics are essential to the desks function."); Weiss Watch Co., Inc. Closing Letter (Dec. 7, 2015) (Unqualified claim deceptive where "though the cost of the Swiss parts may be small relative to Weiss's overall U.S. manufacturing costs, the imported parts constitute the key parts of the watches' movement, and are essential to the watches' function."); Hawke Enterprises Inc. Closing Letter (Nov. 14, 2012) (Unqualified claim for floor cleaners deceptive where they contained Mexican motors.). In the same way that a watch cannot be a watch without a movement, glue cannot be glue without its adhesive ability, an adjustable desk cannot be an adjustable desk without its adjustment mechanism, a diaper cleaner cannot be a diaper cleaner without its essential clip, and a floor cleaner cannot be a floor cleaner without its essential

4

motor, vitamin supplements simply cannot be vitamin supplements without the vitamins, including vitamin C, one of the most well-known vitamins, the health benefits of which have been extensively studied. A vitamin supplement with vitamin C from foreign sources is not all or virtually all made in the U.S.A. The same is true for other vitamin supplement products that contain foreign-sourced vitamins.

## II.    Parties, Jurisdiction, and Venue

4.    Plaintiff Angel McDonnell is an adult resident citizen of Plainfield, Illinois, which is within this district and division.

5.    Defendant Nature's Way Products, LLC ("Nature's Way"), is a limited liability company organized under the laws of the state of Wisconsin with its principal place of business in Green Bay, Wisconsin.  According to the package label of the products, Nature's Way is the manufacturer of Alive! Women's Energy Supplement and other vitamin supplements.

6.    Because there is diversity between Plaintiff and the corporate defendant, and because the aggregate amount in controversy for the class claims exceeds $5,000,000, exclusive of interest and costs, diversity jurisdiction exists under 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005.

7.    Defendant sold the Alive! Women's Energy Supplement through retail stores throughout the country, including in this district and division, and Plaintiff bought the product in this district and division. Therefore, venue is appropriate under

28 U.S.C. § 1391(b)(2) because a substantial part of the conduct giving rise to this action occurred in this district and division.

### III.    Factual Background

8.    Plaintiff is an unsophisticated consumer who, on several occasions within the applicable limitations period, including throughout 2013 and 2014, bought Nature's Way Alive! Women's Energy Supplement for personal and household use. Plaintiff purchased the supplements at CVS and Walgreens stores in Joliet and Plainfield, Illinois.

9.    Defendant markets and sells products with vitamin C as a significant ingredient, including Alive! Women's Energy Supplement and the products listed in Paragraph _ below. These products contain vitamin C in the form of ascorbic acid, which is not manufactured in the United States. Therefore, the vitamin C is necessarily foreign-sourced.

10.    Despite these foreign ingredients, the label of Alive! Women's Energy Supplement states "Made in USA" on the bottom of the box. In addition, the bottle label states "Made in the USA." This picture of the label on the bottom of the box (expanded for ease of viewing) was taken immediately prior to the filing of the original Complaint, of a product purchased in 2016, but the label states that it was copyright 2014, and it is either the same as or very similar to the labels seen by Plaintiff.

6



11. This representation of the USA as the country of origin is deceptive because Alive! Women's Energy Supplement contains substantial ingredients that are manufactured in and sourced from foreign countries.

12. During the three-year period prior to the filing of the present suit, the labels of the products listed in Paragraph 22 made the exact same misrepresentation of U.S. origin, which was false for the exact same reason, because the products contained, at least one essential ingredient, vitamin C in the form of Ascorbic Acid, which was foreign-sourced.

13.     The supplements are not "all or virtually all" made in the USA, and the parts of the supplements sourced from outside the USA are a "significant part" of the products. Therefore, under the guidelines of the Federal Trade Commission, the use of the phrase "Made in the USA" on the labels is deceptive.

14.     Defendant placed these misleading and inaccurate labels on their products with the intention that Plaintiff and other consumers rely on them.

15     Plaintiff saw the misleading wording on the product's label prior to purchasing the vitamins and relied upon Defendant's representation, believing that the "Made in the U.S.A." label meant that the items met the legal standard to bear such labels. While Plaintiff, as an unsophisticated consumer, was not fully and precisely aware of the nature of that standard, she did believe that at least the vitamins in a vitamin supplement product had to come from the United States, for the manufacturer to be allowed to put "Made in the U.S.A." on the label.

16.     Plaintiff was deceived by Defendant's misrepresentation because she formed the reasonable belief that vitamins claiming to be "Made in the U.S.A." would contain vitamins, including vitamin C, that was not from a foreign source.

17.     Plaintiff is an unsophisticated consumer who purchased the products for household use, for herself and other members of her household to ingest into their bodies.

18.     Plaintiff is also a patriotic American who prefers to purchase goods made in the United States rather than imported goods, and is willing to pay a premium for American-made goods. In this regard, Plaintiff is similar to other American consumers who are willing to pay more for American-made goods.

19.     A 2015 survey by *Consumer Reports* magazine found that almost 80% of Americans are willing to pay more for American-made goods.

> This month . . . we examine one of the nation's most ubiquitous labels: Made in America. It's a phrase that wields real power in the marketplace. A recent Consumer Reports survey found that 77 percent of Americans are willing to pay more for a product that has the claim.

"What does the 'Made in America' label really mean?" *Consumer Reports*, July 2015, available at www.consumerreports.org/cro/magazine/2015/07/from-our-president-july-2015/index.htm.

20.     Research by the American Marketing Association, published in the *Journal of International Marketing*, confirms these findings:

> Our findings show that consumers not only prefer and assign a higher value to branded products from a country of origin with a favorable country image but also are willing to spend more money to obtain them.

"Consumers will pay more for a 'Made in the USA' label," *Journal of International Marketing*, March 2016, summary available at www.ama.org/publications/JournalOfInternationalMarketing/Pages/pr_jim.10.014 0.aspx.

21.     Plaintiff has suffered damages because she paid more for the products than they were actually worth. She believed the products to be made in the USA and relied upon that in her purchase decision. In addition, Plaintiff has not received the benefit of her bargain in choosing an American-made product. She desired to support American jobs, American manufacturing, and American companies that do things the right way in manufacturing products in the United States in such a way that they can legally make the "Made in the U.S.A." claim. The foreign ingredients, including ascorbic acid, used in the products were less valuable than the American ingredients represented to be in the product. In short, Plaintiff would not have purchased the vitamins at the price she paid if she had known that they contained foreign-sourced vitamins.

22.     The following products manufactured by Defendant are labeled Made in the U.S.A. and contain foreign-sourced ascorbic acid as an essential ingredient, just like Alive! Women's Energy Supplement:

- Alive! Protein Shake Chocolate .57 lb.      - Alive! (With Iron) 30 Tabs

- Alive! Protein Shake Vanilla .52 lbs.       - Alive! (With Iron) 60 Tabs

- Alive! (With Iron) 90 Tabs                  - Alive! (With Iron) 180 Tabs

- Alive! (No Iron) 30 Tabs                    - Alive! (No Iron) 60 Tabs

- Alive! (No Iron) 90 Tabs                    - Alive! (No Iron) 189 Tabs)

- Alive! (With Iron) 90 Veg. Caps             - Alive! (No Iron) 90 Veg Caps

10

- Alive! Once Daily Ultra 60 Tabs          - Alive! Womens 90 Tabs

- Alive! Once Daily Men's Ultra 60 Tabs      - Alive! Men's 90 Tabs

- Alive! Once Daily Women's Ultra 60 Tabs

- Alive! Once Daily Men's 50+ Ultra 60 Tabs

- Alive! Once Daily Women's 50+ Ultra 60 Tabs

- Alive! Once Daily Women's Ultra 30 Tabs

- Alive! Once Daily Men's Ultra 30 Tabs

- Alive! Women's Multi Gummy 60 Ct. (FDM)

- Alive! Women's 50+ Multi Gummy 60 Ct. (FDM)

- Alive! Daily Energy (With Iron) 60 Tabs

- Alive! 50+ Energy (No Iron) 60 Tabs

- Alive! Men's Energy 50 Tabs 3/band

- Alive! Women's Energy 50 Tabs 3/band

- Alive! Women's 50+ 50 Tabs 3/band

- Alive Men's 50+ 50 tabs 3/band          - CranRX Liquid 16 Oz.

- Wellesse Multivitamin+ 16 oz.          - CranRX Liquid 32 oz.

- CranRx 30 veg caps (FDM) 3/band

Because these products are vitamin supplement products, the Vitamin C (in the form of ascorbic acid) in these products is an essential ingredient and a significant part of the product. Sample pictures of the labels, including "Made in

USA" representations, of some of these products are provided in Exhibit B. These pictures are intended to provide examples to the Court.

23.    Each of the items in Paragraph 22 was also found on a list of products for which Nature's Way offered a refund in California, because "customers may have been confused by the 'Made in USA' label that appeared on some of our products." http://www.naturesway.com/Customer-Satisfaction-Program (A copy of this notice is also provided as Exhibit A). Plaintiff believes that this list first appeared on Nature's Way's website on January 13, 2016. Nature's Way offered refunds to consumers from California who returned the product or proof of purchase by June 30, 2016. No refunds were offered to consumers who were deceived in other states, including Illinois, Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.

24.    The internet notice described in Paragraph 23 also noted other products that do not contain ascorbic acid. According to the language of the notice itself, Defendant placed these products on the list because "customers may have been confused by the 'Made in USA' label." http://www.naturesway.com/Customer-Satisfaction-Program. By Defendant's own admission, therefore, these products, listed by name and Material ID number, contain foreign-sourced ingredients:

- Alive! Calcium Gummy 60 Ct (HFS) (Material ID No.10255)

- Primadophilus Fortify Daily 30B 30 veg caps 3/Band (No. 10294)

- Primadophilus Fortify Women's 30B 30 veg caps 3/Band (No. 10295)

- Alive! Calcium 180 Tabs Bonus Pack (No. 10501)

- CranRx Liquid 32 Oz. (No. 10522)

- CranRx Liquid 16 Oz. (No. 10613)

- CranRx 30 veg caps (FDM) 3/band (No. 10674)

- Organic Stevia Original 2 oz. Liquid (No. 10741)

- Organic Stevia Vanilla 2 oz. Liquid (No. 10743)

- Organic Stevia Mocha 2 oz. Liquid (No. 10868)

- Organic Stevia Peppermint 2 oz. Liquid (No. 10869)

- Organic Stevia Pumpkin 2 oz. Liquid (No. 10890)

- Organic Stevia Hazelnut 2 oz. Liquid (No. 10891)

- Fisol Fish Oil 90 sg (No. 14370)

- EstroSoy Plus 60 caps (No. 14536)

- Pepogest (Peppermint Oil) 60 sg (No. 14537)

- Fisol Fish Oil 45 sg (No. 14592)

- DIM-plus 60 veg caps (No. 14810)

- DIM plus 120 veg caps (No. 14850)

- Fisol Fish Oil 180 sg (No. 15334)

- Thisilyn Digestive Cleans 90 veg caps (No. 15404)

- Super Fisol Fish Oil 180 sg (No. 15518)

- Sytrinol 60 sg (No. 15570)

- Sytrinol 120 sg (No. 15571)

- Super Fisol Fish Oil 90 sg (No. 15688)

- Curica Pain Relief 100 tabs (No. 15782)

- Calcium & Vitamin D 16 oz (No. ST1388)

- Joint Movement Glucosamine 16 oz. (No. ST1394)

- Aloe Vera 16 oz. (No. ST1584)

- Vitamin D 16 oz. (No. ST1894)

- Digestive Health 16 oz. (No. ST1909)

- B-Complex Complete 16 oz. (No. ST1917)

- Liquid Iron 16 oz. (No. ST1923)

- B12 2 oz. (No. ST1924)

- Vitamin D 5000 16 oz. (No. ST1928)

- Protein Complete 16 oz. (No. ST1931)

## IV.    Class Allegations

25.    Plaintiff brings this action on her own behalf and on behalf of others similarly situated as a multi-state class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class which Plaintiff seeks to represent is composed of and defined as:

> All persons in states which have enacted the Uniform Deceptive Trade Practices Act, the Illinois Consumer Fraud and Deceptive Business

Practices Act, or any act similar in substance, who, within the applicable limitations period, have purchased dietary supplements manufactured and marketed by defendant labeled "Made in the USA or were otherwise labeled as "USA-sourced" items.

The Illinois laws in question are 815 ILCS 510/2 and 815 ILCS 505/2. The other states with similar if not identical laws are Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. See Cal. Bus. & Prof. Code § 17200, et seq.; Fla. Stat. § 501.201 et seq.; Mich. Stat. §445.901 et seq.; Minn. Stat. §§325F.68-325F.70; Mo. Rev. Stat § 407.010 et seq.; N.J. Stat. Ann. § 56:8-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; and Wash. Rev. Code §19.86.010 et seq. In Mullins v. Direct Digital, LLC, the plaintiff sought to represent a similar class, including all nine states that Plaintiff seeks to include here. 795 F.3d 654 (7th Cir. 2015). The Seventh Circuit affirmed certification of the multi-state class alleging violations of these laws in Mullins. Id.

26. Alternatively, if the Court does not certify the above class, Plaintiff seeks to represent the following Illinois-only class:

All Illinois residents who, within the applicable limitations period, have purchased dietary supplements manufactured and marketed by defendant labeled "Made in the USA or were otherwise labeled as "USA-sourced" items.

27. This action has been brought and may be properly maintained as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure,

and satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements thereof.

28.     Defendant markets its dietary supplements in major retail stores throughout the United States as well as on the Internet. Therefore, the Plaintiff class is so numerous that the individual joinder of all members is impracticable. The class meets the numerosity requirement of Fed. R. Civ. Proc. 23(a)(1).

29.     Common questions of law and fact, including whether Defendant's dietary supplements contain ingredients manufactured and sourced from foreign countries, exist in this case. The class meets the commonality requirement of Fed. R. Civ. Proc. 23(a)(2).

30.     Plaintiff's claims are typical of the claims of the members of the class under Fed. R. Civ. P. 23(a)(3). The Plaintiff and all members of the class sustained damages arising out of Defendant's common course of conduct in violation of the law as complained herein. The losses of each member of the class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

31.     The Plaintiff named herein will fairly and adequately protect the interests of the class as required by Fed. R. Civ. P. 23(a)(4). The named Plaintiff has no interests which are averse to the interests of absent class members. Plaintiff, like all class members, purchased dietary supplements falsely labeled "Made in USA."

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy under Fed. R. Civ. Proc. 23(b) because individual joinder of all class members is impracticable. Furthermore, because the damages suffered by each individual member of the class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual class members to redress the wrongs done to them. Individual litigation would likewise burden the court system to a much greater degree than a class action, and would present the potential for inconsistent or contradictory judgments. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each class member.

## V. Claims for Relief

### Count 1: Violation of the Illinois Consumer Fraud Act – Alive! Women's Energy Supplement

33.     Plaintiff incorporates by reference paragraphs 1-24 of this Complaint as if fully set forth herein.

34.     Illinois law prohibits anyone from using "deceptive representations or designations of geographic origin in connection with goods or services." 815 ILCS 510/2.

35.     The Illinois Consumer Fraud Act, in Section 815 ILCS 505/2 makes it an unfair or deceptive act or practice to engage in any activity that violates 815 ILCS

510/2. Because Defendant violated the prohibition against deceptive designations or representations of geographic origin in 815 ILCS 510/2(a)(4), it also violated 815 ILCS 505/2.

36.     Under 815 ILCS 505/2, the Made in USA statements by Defendant on the labels of Alive! Women's Energy Supplement constituted a deceptive act or practice. The Made in USA statements were made and the purchases occurred in trade or commerce. Defendant intended that Plaintiff and the class rely on the statements. The deception caused damage to Plaintiff and the class.

37.     Plaintiff, and the class she represents, are entitled under this act to actual damages calculated by difference in price between the product as sold and what it would have been worth had it not been deceptively advertised, punitive damages, and attorneys' fees.

**Count 2: Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act – Other products containing Ascorbic Acid**

38.     Plaintiff incorporates by reference paragraphs 1-24 of this Complaint as if fully set forth herein.

39.     Each of the products listed in Paragraph 22 contain foreign-sourced ascorbic acid and are labeled with representations of U.S. origin.

40.     These products are substantially similar to the product purchased by the named Plaintiff because they contain the same foreign ingredient as the product Plaintiff purchased and the same misrepresentation that the product is made in the

18

U.S.A. The products deceived and harmed class members in the exact same way that plaintiff was deceived and harmed.

41. The representation that the products listed in Paragraph 22 are American-made violates 815 ILCS 510/2 and 815 ILCS 505/2. Class members purchased these products in trade or commerce and defendant intended that plaintiff and the class rely on its misrepresentations. The deception caused damage to plaintiff and the class.

42. Plaintiff, and the class she represents, are entitled under this act to actual damages calculated by difference in price between the product as sold and what it would have been worth had it not been deceptively advertised, punitive damages, and attorneys' fees.

## Count 3: Violation of the Illinois Consumer Fraud Act – Other Products Named by Defendant

43. Plaintiff incorporates by reference paragraphs 1-24 of this Complaint as if fully set forth herein.

44. Defendant's website related to its voluntary reimbursement program in California listed each of the products named in paragraph 24 because "customers may have been confused by the 'Made in USA' label." http://www.naturesway.com/Customer-Satisfaction-Program.

45.     Each of these products is substantially similar to the product purchased by the plaintiff because the consumers who purchased these products were deceived and harmed in the exact same manner as the Plaintiff.

46.     The representation that the products listed in Paragraph 23 are American-made violates 815 ILCS 510/2 and 815 ILCS 505/2. Class members purchased these products in trade or commerce and defendant intended that plaintiff and the class rely on its misrepresentations. The deception caused damage to plaintiff and the class.

47.     Plaintiff, and the class she represents, are entitled under this act to actual damages calculated by difference in price between the product as sold and what it would have been worth had it not been deceptively advertised, punitive damages, and attorneys' fees.

**Count 4: Unjust Enrichment**

48.     Plaintiff incorporates by reference paragraphs 1-24 of this Complaint as if fully set forth herein.

49.     As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and the Class.

50.     Because Defendant's retention of this unjust benefit violates fundamental principles of justice, equity, and good conscience, Defendant should be forced to disgorge all profit unjustly gained from its illegal activities.

## Count 5: Claims Under Similar State Statutes

51.     Plaintiff incorporates by reference paragraphs 1-24 of this Complaint as if fully set forth herein.

52.     Other states have deceptive trade practices acts which, as they apply to the facts at issue here, are in substance the same as the Acts referenced in Counts 1 and 2, prohibiting the conduct detailed herein. The other states with similar if not identical law are Florida, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. See Fla. Stat. § 501.201 et seq.; Mich Stat. §445.901 et seq.; Minn Stat. §§325F.68-325F.70; Mo. Rev. Stat § 407.010 et seq.; N.J. Stat. Ann. § 56:8-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; and Wash. Rev. Code §19.86.010 et seq. On behalf of the plaintiff class, plaintiff asserts claims under those statutes as well for class members residing in those states.

53.     None of the other state statues at issue requires Plaintiff to prove any additional elements to those found in the IDTPA and ICFA. The facts herein are sufficient to state a claim under each of these statutes.

54.     On behalf of the out-of-state class members, plaintiff seeks actual damages, punitive damages, attorney's fees, and costs.

Based on the foregoing, Plaintiff prays for the following relief:

A) An order certifying this as a multi-state class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B) An order appointing Plaintiff's counsel as Class Counsel to represent the interests of the class;

C) After trial, an injunction ordering Defendant to stop their violations of law as alleged herein;

D) After trial, an award of compensatory and punitive damages;

E) After trial an award based on the disgorgement of Defendant's unjustly achieved profits;

F) An award of costs, including reasonable attorneys' fees; and

G) Such further or different relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by struck jury on all counts.

Respectfully Submitted,

/s/ John E. Norris
John E. Norris
One of the Attorneys for Plaintiff

**OF COUNSEL:**
John E. Norris
Wesley W. Barnett
Dargan M. Ware
DAVIS & NORRIS LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com

dware@davisnorris.com
krivers@davisnorris.com


Michael J. Gunderson
THE GUNDERSON LAW FIRM, LLC
2155 West Roscoe Street
Chicago, Illinois 60618
Telephone: 312-600-5000
mgunderson@gundersontharp.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served on all counsel of record through the Court's CM/ECF electronic filing system on April 18, 2017.

/s/ John E. Norris
John E. Norris ILND-GB-11537
Attorney for Plaintiff