# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL MCDONNELL | ) | |
| | ) | |
| Plaintiff, | ) | 1:16-cv-05011 |
| | ) | |
| vs. | ) | Honorable Sara Ellis |
| | ) | |
| **NATURE'S WAY PRODUCTS, LLC** | ) | Honorable Sidney Schenkier (Magistrate) |
| | ) | |
| Defendants. | ) | |

## DEFENDANT'S CORRECTED MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Nature's Way Products, LLC ("Nature's Way") through its undersigned attorneys, submit its corrected[1] Memorandum in Support of its Motion to Dismiss Plaintiff Angel McDonnell's Second Amended Complaint pursuant to Rules 12(b)(6) and (b)(2) of the Federal Rules of Civil Procedure.

### INTRODUCTION & PROCEDURAL BACKGROUND

In the last two years, Plaintiff's counsel – John E. Norris of Birmingham, Alabama – has blanketed this Court with eight separate suits purporting to state class action claims against various manufacturers and retailers under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 810 ILCS 510 *et seq.* and Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*[2] relating to products allegedly containing

---

[1] The fourth and last pages of Dkt. 50-1, the memorandum filed on June 7, 2017, contained inadvertent references to Nature's Way's Rule 12(b)(**1**) personal jurisdiction argument directed at the claims based on the 69 newly identified products in paragraphs 22 and 24 of the Second Amended Complaint. Rule 12(b)(1) does not address personal jurisdiction, it addresses subject matter jurisdiction. Nature's Way's personal jurisdiction argument is brought under Rule 12(b)(**2**), not Rule 12(b)(1). This corrected memorandum is filed to address these two typos.

[2] The plaintiffs in these cases also sought to assert claims under the consumer protection statutes of a number of other states.

vitamin C. The cookie-cutter complaints filed in each of these cases are remarkably similar: the named plaintiff alleges he/she bought a product with a Made in U.S.A. statement on the product label and/or packaging and alleges the statement is false because the product contains Vitamin C which, according to the complaint, is not made in the United States and is foreign sourced.

a. 1:16-00919 *Ohlman v. Continental Vitamin Co., Inc.,* filed 01/22/16, closed 01/23/17.

b. 1:16-01183 *Wambach et al v. Church & Dwight Co., Inc.,* filed 01/26/16, closed 06/16/16.

c. 1:16cv05011 *McDonnell v. Nature's Way Products LLC,* filed 05/05/16, remains pending.

d. 1:16cv05973 *deMedicis v. CVS Health Corp. et al.,* filed 06/07/16 closed 03/22/17

e. 1:16cv07144 *Wisniewski v. Hero Nutritionals Inc.,* filed 07/11/16, remains pending

f. 1:16cv08550 *Sabo v. Wellpet, LLC,* filed 08/31/16, closed 04/21/17

g. 3:16cv50021 *Sensenig v. Wellpet, LLC* filed 02/01/16, closed 06/17/16

h. 3:16cv50022 *Sensenig v. Nestle USA, Inc. et al* filed 02/01/16, closed 06/17/16

Three of these cases - the two *Sensenig* cases and *Wambach* – were abandoned via voluntary dismissal after the defendants filed motions to dismiss. Two of these cases – *Sabo* and *deMedicis* – were dismissed pursuant to Rule 12(b)(6) on the grounds that the plaintiffs failed to allege actual pecuniary harm necessary to state an ICFA claim and could not allege the risk of future harm necessary to state a UDTPA claim. See *Sabo v. Wellpet, LLC,* 2017 U.S. Dist. LEXIS 61114 (N.D.Ill. Apr. 21, 2017). Of the eight suits Plaintiff's counsel filed, only two remain pending – *Wisniewski* and *McDonnell*. The defendant in *Wisniewski* did not move to dismiss the complaint. In contrast, Nature's Way has moved to dismiss each of three complaints Plaintiff McDonnell has filed in this case.

2

On May 5, 2016, Plaintiff filed a three-count Complaint ("Original Complaint"). (Dkt. 1.) On August 5, 2016, Defendant Nature's Way and then Defendant Schwabe North America, Inc. ("Schwabe") moved to dismiss the Original Complaint in its entirety, citing six (6) bases for dismissal. (Dkt. 17, 17-1.) Plaintiff did not file a response in opposition to the motion defending the sufficiency of the Original Complaint. Instead, Plaintiff sought leave to file an amended complaint (Dkt. 20), which leave the Court granted (Dkt. 23.) On September 19, 2016, Plaintiff filed the four-count Amended Complaint, which Nature's Way moved to dismiss in its entirety. On March 28, 2017, the Court entered an order granting Nature's Way's 12(b)(6) motion in part and denying it in part. The Court dismissed the UDTPA claim on the grounds that Plaintiff failed to allege a likelihood that Nature's Way's alleged use of the Made in USA statements on its products will harm Plaintiff in the future. (Dkt. 38, pp. 3-5.)

The Court declined to dismiss the ICFA or unjust enrichment claims based on her alleged purchase of Women's Alive. (Dkt. 38, pp. 5-7.)

The Court dismissed all claims based on the purchase of any product other than Women's Alive (Dkt. 38, p. 8.)

The Court deferred ruling on claims based on the purchase of Women's Alive arising under the consumer protection statutes of other states on the grounds that this is a standing issue that "will be deferred until the Court addresses class certification on the merits." (Dkt. 38, pp. 8-11.) Finally, the Court rejected Nature's Way's motion to strike Plaintiff's jury demand. (Dkt. 38, pp. 11-12.)

In lieu of simply proceeding on the claims in the First Amended Complaint that were not dismissed, Plaintiff sought and the Court granted Plaintiff leave to file the Second Amended

3

Complaint. (Dkt. 41.) Plaintiff filed the Second Amended Complaint on April 18, 2017 (Dkt. 42.) As discussed in more detail below, the Second Amended Complaint, which supercedes the original and first amended complaints, abandons Plaintiff's UDTPA claim, but is otherwise a significant expansion of Plaintiff's prior pleadings. Unlike the two prior pleadings, which were based upon Plaintiff's allege purchase of Women's Alive at retail stores in Illinois, the Second Amended Complaint purports to state claims based on Women's Alive and sixty-eight (69) other products, none of which Plaintiff claims to have purchased. (Dkt. 42, ¶¶22, 24.)

## SUMMARY OF ARGUMENT

Each of the five counts in the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6) on the grounds that they fail to state a claim upon which relief can be granted. Moreover, the claims based on purchases of Women's Alive and/or any of the newly identified products in paragraphs 22 and 24 by any consumer outside the State of Illinois should be dismissed pursuant to Rule 12(b)(2) as there is no personal jurisdiction for such claims.

1. Counts I-V should be dismissed for failing to allege a pecuniary injury;

2. Counts II and III, both of which purport to premise claims on allegedly misleading labels on vitamin supplements other than Alive! Women's Energy Supplement should be dismissed for lack of personal jurisdiction;

3. Count V, Plaintiff's purported claim under unidentified sections of certain California, Florida, Michigan, Minnesota, Missouri, New Jersey, New York and Washington statutes, should be dismissed for lack of personal jurisdiction;

4. Count I-V, as they relate to the 69 products referenced in paragraphs 22 and 24, should be dismissed for failing to adequately allege fraud with the requisite specificity;

5. Count V, as it relates to the deceptive trade practice acts of other states should be dismissed because Plaintiff has abandoned her claim under the UDTPA and because Plaintiff cannot state a claim under the UDTPA; and

6. Counts II-V, as they relate to products other than Women's Alive should be dismissed for the reasons set forth on pp. 8-9 the Court's March 28, 2017 Order.

4

**ALLEGATIONS IN THE SECOND AMENDED COMPLAINT**

The Second Amended Complaint abandons what was Plaintiff's claim for violation of the UDTPA. (Compare Dkt. 24, Count 1, alleging a claim under the UDTPA and Dkt. 42, passim, where no UDTPA claim is alleged.)

Plaintiff alleges she is an Illinois resident who bought Alive! Women's Energy Supplement ("Women's Alive") in 2013 and 2014 at CVS and Walgreens stores in Illinois. (Dkt. 42, ¶¶4, 8.) Plaintiff alleges Women's Alive is a vitamin supplement manufactured by Nature's Way, a limited liability company that is a citizen of Wisconsin for purposes of diversity jurisdiction. (¶5.)

Plaintiff's claims are based on what she contends is a "misleading," "inaccurate," and "deceptive" statement contained on the label of Women's Alive. (¶¶11-14) Plaintiff alleges the label states, "Made in U.S.A." Plaintiff alleges this statement is deceptive because Women's Alive "contains substantial ingredients that are manufactured in and sourced from foreign countries." (¶11.) Plaintiff cites Vitamin C as a "foreign-sourced ingredient" in Women's Alive. (¶12.) Plaintiff alludes to the presence of other foreign sourced ingredients in Women's Alive but does not identify them. (¶¶12-13.) Plaintiff contends that these unidentified foreign sourced ingredients are a "significant part" of Women's Alive. *Id.*

Plaintiff references what she contends are regulations promulgated by the Federal Trade Commission ("FTC") regarding "domestic-source representations." (¶2.) Plaintiff argues that these regulations limits the circumstances in which manufacturers and merchants can use the statement "Made in U.S.A." in marketing and advertising their products. (¶¶1-3.) Plaintiff

argues that the use of "Made in U.S.A." on the 2016 Label violates these regulations and is misleading. (¶¶1-3.)

Whereas the Amended Complaint did not specifically reference any product other than Women's Alive, the Second Amended Complaint purports to state claims based on the sixty-nine products referenced in paragraphs 22 and 24.

Paragraph 22 references 33 products allegedly manufactured by Nature's Way, which products are allegedly labeled "Made in the U.S.A." and contain "foreign sourced ascorbic acid as an essential ingredient." (Dkt. 42, ¶22.) Plaintiff does not allege she purchased any of the products in paragraph 22 or that any of these products were purchased in the State of Illinois. (Dkt. 42, *passim*.)

Paragraph 24 references 36 products allegedly manufactured by Nature's Way, which products were allegedly part of a refund program offered by Nature's Way to California consumers. Plaintiff alleges that the refund program related to potential customer confusion regarding "the 'Made in USA' label that appeared on some of [Nature's Way's] products." (Dkt. 42, ¶23.) Plaintiff alleges the refund program included 36 products that do not contain acorbic acid. *Id.* Plaintiff alleges that by including these 36 products in the alleged refund program, Nature's Way has "admi[tted that these products] contain foreign-sourced ingredients." No such admission is set forth on the webpage Plaintiff cites in paragraph 23 and 24. Plaintiff does not allege what "foreign-sourced ingredients" are in the 36 products referenced in paragraph 24. Plaintiff does not allege she purchased any of the products in paragraph 24 or that any of these products were purchased in the State of Illinois. (Dkt. 42, *passim*.)

Plaintiff alleges she suffered damages because "she paid more for the [Women's Alive] than [it was] actually worth." (¶21.) Plaintiff does not allege what she paid for the Women's Alive (Second Amended Complaint, *passim*.) Similarly, Plaintiff does not identify any other vitamin supplement or its price to support the conclusory allegation that Women's Alive costs more because of the "Made in U.S.A." statement. *Id.* Plaintiff also alleges that she did not receive the benefit of what she bargained for because sought to purchase a vitamin supplement devoid of "foreign-sourced vitamins." (¶21.) Plaintiff also argues that no such vitamin supplement exists. Plaintiff argues that any vitamin supplement containing ascorbic acid is not "Made in the U.S.A." because ascorbic acid "is not manufactured in the United States." (¶9.) Plaintiff alleged she would not have purchased Women's Alive "if she had known they contained foreign-sourced vitamins." (¶21.)

**ARGUMENT**

**I.      Counts I-V Should be Dismissed For Failure to Allege Pecuniary Injury**

Plaintiff claims she was injured because the alleged "Made in U.S.A." statement on the Women's Alive caused Plaintiff to pay more for the product than it was worth. (¶¶17, 20.) According to Plaintiff, she is willing to pay more for "American-made goods" and was injured because she paid an alleged "American-made" premium for Women's Alive without receiving an "American-made" vitamin supplement for the alleged higher cost. *Id.* Plaintiff alleges she would not have purchased Women's Alive if she knew it contained "foreign sourced" ascorbic acid. The problem with this theory of actual damages is that it consists exclusively of theoretical, speculative, legal conclusions, none of which are taken as true for purposes of this Rule 12(b)(6) motion. Moreover, Plaintiff's conclusory allegation – she would not have

purchased Women's Alive had she known it contained foreign sourced ascorbic acid – does not establish a pecuniary injury.

To establish that Women's Alive commanded an American-made premium price in 2013 and 2014, which alleged price exceeded the alleged price of comparable vitamin supplements marketed without a "Made in USA" statement, Plaintiff must allege both what she paid for the Women's Alive and the price of comparable vitamin supplements.  Plaintiff has not alleged the price she paid for the Women's Alive she allegedly purchased in 2013 and 2014.  Nor has she alleged the price of comparable vitamin supplements offered for sale during this time period.  The absence of such allegations precludes Plaintiff from establishing that she was injured when she purchased Women's Alive.  Plaintiff's references to alleged studies and press reports purporting to establish that, as a general matter, consumers are willing to pay more for "American-made goods" (¶¶18, 19) are beside the point.  There are no well-plead allegations to substantiate Plaintiff's claim that she paid more for Women's Alive as a result of the alleged "Made in U.S.A." statement.  The absence of such allegations precludes Plaintiff from establishing the required pecuniary injury.

In its decision granting in part and denying in part Nature's Way's motion to dismiss the amended complaint, the Court concluded that the "bare-bones" allegations in the amended complaint sufficiently alleged a pecuniary loss because Plaintiff alleged she would not have purchased Women's Alive if she knew about its allegedly foreign sourced ingredients.  Respectfully, even taking this conclusory allegation as true for purposes of deciding this Rule 12(b)(6) motion, this allegation does not establish the required pecuniary loss.  At most, it establishes that Plaintiff received a vitamin with a single foreign sourced ingredient vs. a vitamin with no foreign sourced ingredients.  This allegation may go to the issue of whether Plaintiff was

8

deceived or relied on the alleged Made in USA statement, but it does not show that she suffered a pecuniary (i.e., monetary) damage when she purchased Women's Alive.

To establish a pecuniary injury, Plaintiff must establish the monetary damage (if any) associated with her receipt of what she contends is Women's Alive containing foreign sourced ascorbic acid. The Second Amended Complaint contains no such allegations. There is no allegation that the allegedly foreign sourced ascorbic acid is adulterated or unhealthy or operates to transform Women's Alive into some multi-vitamin substantively different than a competing multi-vitamin with domestically sourced ascorbic acid. Moreover, Plaintiff has alleged that there is no such thing as a multi-vitamin with domestically sourced ascorbic acid because all such acid is produced outside the United States.

In an ICFA claim brought by a consumer, establishing pecuniary loss requires allegations in the complaint showing that the consumer paid "more than the actual value of the property" as a result of the allegedly deceptive conduct. *Se Yeun Kim v. Carter's Inc.,* 598 F.3d 362, 365 (7th Cir. 2010). In *Se Yeun Kim*, the Seventh Circuit discussed the pecuniary loss requirement and how it differs from the deceptive act element of an ICFA claim.

> Here, the plaintiffs have sufficiently alleged an ICFA violation by Carter's; regulations promulgated under the Act specifically identify this type of comparison between actual and fictitious 'suggested retail price[s]' as an 'unfair or deceptive act.' Ill. Admin. Code tit. 14, § 470.250. The issue in this case is whether the plaintiffs' ICFA claim nonetheless fails for lack of actual damages.

*Id.* at 365. In *Se Yeun Kim*, the consumer alleged it was misled by false and misleading "suggested retail prices," but did not allege that the clothing it purchased was defective or that the same clothing was available to plaintiff at a better price in the marketplace. *Id.* At 365-66. This Court found the absence of such allegations fatal to the consumer's ICFA claim and the

Seventh Circuit agreed, holding that while the complaint adequately alleged a deceptive act, it failed to allege a pecuniary loss. *Id.*

As recently as April 2017, this Court held that establishing pecuniary loss associated with the purchase of a product represented as "Made in the USA" requires a factual foundation to establish that the Made in the USA claim caused the product to be sold for a price higher than it would have been sold absent the Made in the USA claim. *Sabo v. Wellpet, LLC,* 2017 U.S. Dist. LEXIS 61114 (N.D.Ill. Apr. 21, 2017). "He [the plaintiff in *Sabo*] stops short of alleging he *in fact* paid more for defendant's pet food products because he believes they were American-made. Indeed, he does not claim that defendant charged more for its pet food products because they were (supposedly) 'Made in the USA,' nor does he claim that comparable pet food products that lacked domestic-source designations were less expensive." *Id.* At *8-9.

In *deMedicis v. CVS Health Corp.,* 2017 U.S. Dist. LEXIS 19589 (N.D.Ill. Feb. 13, 2017), this Court noted that the plaintiff had not alleged he would not have bought the multivitamin but for the Made in the USA statement on the product packaging, but did not hold that such an allegation, on its own, was sufficient to allege a pecuniary injury. To the contrary, this Court found that the plaintiff in *deMedicis* failed to allege a pecuniary injury as a result of not alleging facts establishing that the "Made in U.S.A." claim caused plaintiff to pay a higher price than he would have paid in the absence of such a claim.

> However, Plaintiff does not allege that the Supplements were more expensive because they were marked 'Made in U.S.A.' Plaintiff has not alleged that he suffered actual damages under the ICFA. *See Moyer v. Michaels Stores, Inc.,* No. 14-cv-561, 2014 U.S. Dist. LEXIS 96588, 2014 WL 3511500, at *7 (N.D. Ill. July 14, 2014) (holding that plaintiff failed to plead actual damages where plaintiff had not sufficiently pled enough facts to support an inference that store charged customers more for data security protection).

*Id.* at 7. See also, *In re Barnes & Noble Pin Pad*, 2013 U.S. Dist. LEXIS 125730, *15 (no actual injury under the ICFA where plaintiffs did not allege that defendant charged a higher price for goods paid for with credit / debit cards).

For the foregoing reasons, counts I-V should be dismissed with prejudice pursuant to Rule 12(b)(6) because Plaintiff has not alleged the requisite pecuniary injury to support these claims.[3]

**II.    As They Relate to the Purchases of the Products in Paragraphs 22 & 24, Counts II-V Should be Dismissed for Lack of Personal Jurisdiction; Count V, Which Purports to State Claims Based on Purchases Outside of Illinois, Should be Dismissed for <u>Lack of Personal Jurisdiction</u>**

As discussed above, in the Second Amended Complaint, Plaintiff purports to assert claims based upon: (1) her alleged purchase of Women's Alive at CVS and Walgreens in the State of Illinois in 2013 and 2014; and (2) alleged purchases by other consumers of the 69 products referenced in paragraphs 22 and 24, both within and outside the State of Illinois. While the Second Amended Complaint alleges facts which, if true, could establish personal jurisdiction over an ICFA claim by Plaintiff against Nature's Way relating to Plaintiff's purchase of Women's Alive in the State of Illinois, it alleges no facts to establish personal jurisdiction over Nature's Way as to claims arising out of: (1) the sales of Women's Alive outside of Illinois; or (2) the sales of the 69 products referenced in paragraphs 22 and 24.

"General jurisdiction over a foreign corporation is properly asserted 'when [the corporation's] affiliations with the State are so 'continuous and systematic' as to render [it]

---

[3] All of the arguments in this section apply both to Plaintiff's alleged purchases of Women's Alive in the State of Illinois in 2013 and 2014 and to any purchases of the 69 products referenced in paragraphs 22 and 24. Even if Plaintiff had alleged purchases by someone of the 69 products referenced in these paragraphs, Plaintiff has not alleged any pecuniary injury associated with such purchases. There are no allegations that anyone paid more for any of the 69 products than they otherwise would have absent the alleged "Made in USA" statement on the packaging of these products.

11

essentially at home in the forum State.'" *DeMaria v. Nissan North Am., Inc.,* 2016 U.S. Dist. LEXIS 11295, *16 (N.D. Ill. Feb. 1, 2016). "Specific jurisdiction is proper when a defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from the alleged injuries that 'arise out of or relate to' those activities." *Id.* at *18. The specific jurisdiction analysis evaluates whether plaintiff's claims against defendant arise out of defendant's contacts with the forum state. *Id.* at *18-19.

The Second Amended Complaint alleges Nature's Way is a citizen of the State of Wisconsin for purposes of diversity jurisdiction and, in this regard, establishes general jurisdiction over Nature's Way in the State of Wisconsin. Plaintiff alleges no facts establishing general jurisdiction over Nature's Way in the State of Illinois. The Second Amended Complaint puports to establish specific jurisdiction over Nature's Way in the State of Illinois by virtue of Plaintiff's purchase of Women's Alive at Walgreens and CVS stores in the State of Illinois in 2013 and 2014. The Second Amended Complaint is otherwise devoid of any allegations establishing specific jurisdiction over Nature's Way in the State of Illinois.

Plaintiff has not alleged she purchased any of the 69 products referenced in paragraphs 22 and 24. Plaintiff has alleged only that she purchased Women's Alive at retail stores in Illinois in 2013 and 2014. At most, Plaintiff has established specific jurisdiction over Nature's Way as to claims arising out of her purchase of Women's Alive. There is no basis for personal jurisdiction over Nature's Way for any claim arising out of purchases of the 69 products referenced in paragraphs 22 and 24.

Moreover, there is no basis for personal jurisdiction over Nature's Way for any of the claims in Count V. Count V purports to be based upon consumer protection statutes in force in

Florida, Michigan, Minnesota, Missouri, New Jersey, New York and Washington. This bare-bones count purports to encompass purchases of Women's Alive and the 69 products references in paragraphs 22 and 24. As a threshold matter, there is no allegation of purchases of Women's Alive or any of the 69 products referenced in paragraphs 22 and 24 in any of these states. However, such allegations, if made, would only be relevant to whether there was a basis for specific jurisdiction over Nature's Way in district courts in those states. As it relates to this suit, pending in this Court, there is no basis for personal jurisdiction over Nature's Way for any of the claims in Count V.

In *deMedicis,* this Court dismissed nearly identical class action claims purporting to encompass a multi-state class based on the alleged violation of consumer protection statutes in several states. *deMedicis,* 2017 U.S. Dist. LEXIS 19589, *11.

> As Defendants argue, "[p]ersonal jurisdiction over the defendant must be established as to each claim asserted." *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040, 1048-49 (N.D. Ill. 2016). Here, Plaintiff has not established personal jurisdiction over the out-of-state claims as he is the sole connection between Defendants and Illinois. *See Demaria v. Nissan N. Am., Inc.*, No. 15 C 3321, 2016 U.S. Dist. LEXIS 11295, 2016 WL 374145, at *8 (N.D. Ill. Feb. 1, 2016) (finding no personal jurisdiction over out-of-state plaintiffs "where each plaintiff's claim is predicated on the law of the particular state where he or she purchased a car and the claims of the other plaintiffs as alleged remain unrelated to anything that transpired in Illinois").
>
> Defendants' Motion to Dismiss Count IV is granted for lack of personal jurisdiction to the extent that Count IV alleges violations of non-Illinois consumer fraud statutes.

Id. at *11. This Court should dismiss Count V for lack of personal jurisdiction. Similarly, this Court should dismiss all claims based on purchases of the products referenced in paragraphs 22 and 24 based on lack of personal jurisdiction.

While Plaintiff's failure to allege a pecuniary injury is dispositive of all of the claims in the Second Amended Complaint, Counts II, III and V are separately subject to dismissal under Rule 12(b)(2) because there is no personal jurisdiction for Plaintiff's new claims based on the alleged sale of any of the newly identified products in paragraphs 22 and 24 by any consumer outside the State of Illinois.

### III. Counts II-V, All of Which Sound in Fraud and Purport to Be Based on Purchases of the Products in Paragraphs 22 and 24, Fail for Lack of Specificity

The gravamen of all claims arising out of the 69 products referenced in paragraphs 22 and 24 is that these products were labelled with a false statement, "Made in U.S.A."

Nothing even approaching the when, what, who, where or how required to state a fraud claim is alleged in relation to the claims based on the alleged purchases of the products referenced in paragraphs 22 and 24.

Plaintiff has not alleged that these products were ever purchased, she has not alleged who purchased them, she has not alleged the contents of the product packaging or how the contents of the packaging caused the un-alleged purchases.[4]

Plaintiff alleges nothing about where or how these products are manufactured, bottled or packaged. Plaintiff fails to identify the country / countries where the ingredients in these products are allegedly manufactured. Plaintiff's argumentative, sweeping, claim that no ascorbic acid is manufactured in the United States and therefore any product containing it contains

---

[4] The exceptions to this deficiency – failing to allege the contents of the product packaging – are the six alleged product labels attached at Dkt. 42-2. Including these images is not sufficient to satisfy Rule 9(b). There are no allegations regarding when these products were purchased, by whom and under what circumstances.

ingredients from a foreign country is devoid of factual content to support this conclusory allegation. Plaintiff cites Vitamin C as a "foreign-sourced ingredient" in the products referenced in paragraph 22, but does not allege where it is manufactured or that Vitamin C constitutes a significant part or virtually all of the ingredients in Women's Alive. Without allegations to support her conclusory statements about the "substantial ingredients" in Women's Alive and how such ingredients comprise a "significant part" of the product, Plaintiff's conclusory, argumentative allegations about the "Made in U.S.A." statement fail.

Plaintiff's allegations as to the products referenced in paragraph 24 are even more threadbare. Plaintiff does not identify any false statements on the packaging of these products. Unlike Women's Alive and the products referenced in paragraph 22, Plaintiff does not allege that any of the paragraph 24 products have foreign sourced ascorbic acid. Plaintiff speculates, without any good faith basis in law or fact, that because Nature's Way allegedly included these products in a customer satisfaction plan directed at California consumers, these products necessarily contain foreign sourced ingredients. This conclusory allegation comes nowhere close to satisfying Rule 9(b). To state a claim based on the purchase of any of these products, Plaintiff must allege that she purchased them in reliance on a false statement, allege with specificity facts establishing why the statement is false and allege facts establishing a pecuniary injury incurred in reliance on the allegedly false statement.

As to the products referenced in paragraphs 22 and 24, Plaintiff has not even meaningfully complied with her obligation to give Nature's Way "fair notice of what the claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a)(2). Having failed to comply with her most basic obligations under Rule 8(a), Plaintiff can make no credible claim to have complied with the particularity requirements of Rule 9(b).

15

For the foregoing reasons, Count II- V should be dismissed.

IV. **Count V contains references to other states UDTPA Statutes; Plaintiff Has Abandoned Her UDTPA Claim, Precluding Her From Seeking Class Relief Under Other States' UDTPA Statutes**

Paragraphs 52 and 53 reference purported claims under the UDTPA statutes of other states. In its order granting in part Nature's Way's motion to dismiss the First Amended Complaint, the Court dismissed Plaintiff's UDTPA claim on the grounds that Plaintiff had failed to alleged the requisite element of exposure to future harm. In the Second Amended Complaint, Plaintiff does nothing to cure this deficiency. As discussed above, Plaintiff abandons her UDTPA claim in the Second Amended Complaint. Having abandoned her UDTPA claim, Plaintiff cannot state such claims on the UDTPA statutes in force in other states.

V. **Counts II-V, as they relate to products other than Women's Alive, Have Cured None of the Deficiencies Outlined in the Prior Motion to Dismiss, Discussed on Page 8-9 of the Court's March 28, 2017 Order**

The 9(b) deficiencies regarding the products referenced in paragraphs 22 and 24 of the Second Amended Complaint are addressed in section III above. Plaintiff's failure to comply with Rule 9(b) with respects to her claims relating to these products merits dismissal of the Counts II-V as to these claims. A related and more fundamental defect in Plaintiff's attempt to state claims relating to the products in paragraphs 22 and 24 is Plaintiff's acknowledgement that she has not ever purchased any of these products. This fact precludes Plaintiff from stating any claims based on other consumers' alleged purchases of these products.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court enter an order granting its motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) and (b)(2). The Second Amended Complaint should be dismissed with prejudice and without leave to amend.

        Respectfully submitted,

        **NATURE'S WAY PRODUCTS, LLC**

        /s/ Barry F. MacEntee

        By: One of Its Attorneys

Donald E. Mrozek – dmrozek@hinshawlaw.com
Joel Bertocchi – jbertocchi@hinshawlaw.com
Barry F. MacEntee – bmacentee@hinshawlaw.com
HINSHAW & CULBERTSON LLP
222 North LaSalle St. | Suite 300
Chicago, Illinois | 60601-1081
(312) 704-3000

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that on June 8, 2017 I filed **Defendant's Corrected Memorandum in Support of its Motion to Dismiss the Second Amended Complaint** through the Court's ECM/CF system, which will cause electronic notification of this filing to be sent to all counsel of record.

By: */s/ Barry F. Mac Entee* .
One of Its Attorneys